## Case No. 16,107.

UNITED STATES v. The QUEEN et al.

[4 Ben. 237;[1] 12 Int. Rev. Rec. 42.]

District Court, S. D. New York. June, 1870.[2]

INFORMATION AGAINST BRITISH VESSEL AND HER MASTER—SMUGGLING—AMENDMENT—JURISDICTION—TRIAL BY JURY—JOINDER.

1. An information was filed against the steamship Queen and her master, alleging that the vessel belonged, in whole or in part, to a citizen or citizens of the United States, and charging that certain merchandise, not included in the manifest on board, had been imported by her into the United States, contrary to section 24 of the act of March 2, 1799 [1 Stat. 644], which, for such offence, imposes upon the master a forfeiture equal to the value of the goods not included in the manifest, and that, by section 8 of the act of July 18, 1866 [14 Stat. 180], the vessel is holden for the payment of the penalty against the master, and becomes liable to be seized and proceeded against, by libel, to recover the same, in this court. The answer of the owners of the vessel denied the allegations of the information, and especially that they were citizens of or residents in the United States, and excepted to the information as alleging no cause of action against the vessel, inasmuch as it did not show that the master or owners of the vessel had been convicted of the acts complained of. The answer of the master also denied the statements of the information and excepted to it, in that it did not set forth a joint cause of action against the vessel and the master, and in that parties were improperly joined, and in that the parties joined were entitled to different modes of trial, and in that this action could not be sustained against the vessel and the master jointly. The suit, as to both vessel and master, was tried before the court without a jury, as a civil cause of admiralty and maritime jurisdiction: Held, that it was clearly proved that the violation of the law set forth in the information was committed.

2. The vessel was a British vessel, and as, under the law, it is immaterial whether the offending vessel is a vessel of the United States or a foreign vessel, the information might be amended without terms, in respect to the ownership of the vessel, and by averring a violation of section 25 of the act of 1866, which extends the provisions of the act of 1799 to vessels owned, in whole or in part, by foreigners.

3. The court had jurisdiction to enforce the penalty against the vessel, in such a proceeding as this, without a trial by jury.

[Cited in U. S. v. The Missouri, Case No. 15,785.]

4. The vessel might be proceeded against for the penalty, irrespective of any proceeding against the master.

[Cited in The Helvetia, Case No. 6,345. Followed in Pollock v. The Sea Bird, 3 Fed. 575; The Paolina S., 11 Fed. 174. Cited in The Sidonian, 38 Fed. 442.]

5. The suit to recover the penalty against the master was a suit at common law, and he was entitled to a trial by jury, under the seventh amendment of the constitution of the United States.

6. The right to recover against the vessel in the present form of proceeding was clear, and, as the answer of the master excepted to the information on the ground that the suit could not be maintained against the vessel and master jointly, and because they were entitled

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
2 [Affirmed in Case No. 16,108.]

to different modes of trial, and the answer of the vessel did not except to such joinder, the information would be dismissed as to the master, and a decree entered against the vessel.

In admiralty.

William Stanley, Asst. U. S. Dist. Atty.

Charles Donohue, for master and claimants of the vessel.

BLATCHFORD, District Judge. This is an information filed on the 13th day of February, 1869, by the district attorney, on behalf of the United States, against the steamship the Queen and Francis Grogan, her master. It alleges, that the vessel is within this district, on waters navigable from the sea by vessels of ten or more tons burthen, and is under seizure by the collector of customs for the city of New York. It also alleges, that the information is filed in a cause, civil and maritime, of forfeiture, for breach of the revenue laws of the United States. The articles of the information set forth: (1) That, on the 9th of February, 1869, the vessel was a vessel belonging, in the whole or in part, to a citizen or citizens, inhabitant or inhabitants, of the United States, and Grogan was the master or person having charge or command of her. (2) That, on that day, sundry merchandise, which is specified, of the value of $2,440, was imported and brought into the United States, in the vessel, which merchandise was not included in the manifest on board, as required by the twenty-third section of the act of March 2, 1799 (1 Stat. 644), contrary to the twenty-fourth section of said act; that thereby Grogan forfeited and became liable to pay the said sum of $2,440, the value of the said merchandise; that the premises are within the admiralty and maritime jurisdiction of this court, and that, by reason thereof, and by force of the eighth section of the act of July 18, 1866 (14 Stat. 180), the vessel is holden for the payment of the penalty against the master, and became liable to be seized and proceeded against summarily, by libel, to recover the same, in this court. The information prays for a decree for the forfeiture against Grogan and against the vessel, for $2,440, as a lien thereon, and that the vessel may be condemned and sold to satisfy the lien.

The National Steamship Company, as owners of the vessel, answer the information and say, that they are a British corporation, and are subjects of Great Britain, and are not citizens of or residents in the United States. They deny the statements of the information and except to it, by their answer, in that it does not set up a cause of action against the vessel, and in that it does not shew that the master or owners of the vessel, or either of them, has or have been convicted of the acts complained of, and allege that no cause of action arises against the vessel until such conviction.

The answer of Grogan denies all the statements of the information, and excepts to it, in that it does not set forth a joint cause of action against the vessel and Grogan, and in that parties are improperly joined, and in that the parties joined, under the cause of action stated, are entitled to separate modes of trial, and in that this action cannot be sustained against them jointly.

The twenty-third section of the act of 1799 provides, that no merchandise shall be brought into the United States from any foreign port or place, in any vessel belonging, in the whole or in part, to a citizen or citizens, inhabitant or inhabitants, of the United States, unless the master or person having the charge or command of such ship or vessel shall have on board a manifest in writing containing, among other things, a just and particular account of all the merchandise taken on board of such vessel. The twenty-fourth section of the same act provides, that if any merchandise shall be imported or brought into the United States in any vessel belonging, in the whole or in part, to a citizen or citizens, inhabitant or inhabitants, of the United States, from any foreign port or place, which shall not be included or described in a manifest on board, agreeably to the directions in the twenty-third section, in every such case the master or other person having the charge or command of such vessel, shall forfeit and pay a sum of money equal to the value of such goods not included in such manifest.

By the twenty-fifth section of the act of July 18, 1866 (14 Stat. 184), as amended by the third section of the act of February 18, 1867 (Id. 394), it is provided, that on and after the 1st day of March, 1867, the several provisions of the said act of March 2, 1799, relating to manifests, shall apply as well to vessels owned, in whole or in part, by foreigners as to vessels of the United States. The eighth section of the same act of July 18, 1866, provides, that in any case where a vessel or the owner, master or manager of a vessel, shall be subject to a penalty for a violation of the revenue laws of the United States, such vessel shall be holden for the payment of such penalty, and may be seized and proceeded against summarily, by libel, to recover such penalty, in any district court of the United States having jurisdiction of the offence.

The case was tried before the court without a jury, as a cause on the instance side of the admiralty court. It was so tried as respected both the vessel and Grogan. It was proved, beyond question, that the violation of the twenty-third and twenty-fourth sections of the act of 1799, set forth in the information, was committed. It was not shown, as alleged in the information, that the vessel was a vessel of the United States, and it was shown that she was a British vessel. But, as, under the law, it is immaterial whether the offending vessel is a vessel of the United States or a foreign vessel, the in-

formation may, if desired, be amended, without terms, under the authority of rule 24 of the rules in admiralty prescribed by the supreme court, in respect to the averment of the ownership of the vessel, and, also, by averring a violation of the twenty-fifth section of the act of 1866, as well as of the other statutory provisions referred to in the information.

The ground taken in defence, at the hearing, was, that no joint cause of action is given by the statute against the vessel and her master; that the intention of the statute is only to make the vessel a security for the penalty denounced against her master; that the cause of action is not one within the admiralty and maritime jurisdiction of this court; that the statute does not authorize the enforcement of the penalty in admiralty; that the penalty cannot be recovered from the master personally without a trial by jury is given to him; that a recovery must be had against the master, for the penalty, before the vessel can be proceeded against for it; and that, if this suit be dismissed as to the master, it must be dismissed as to the vessel.

As respects the vessel, I am satisfied that this court has jurisdiction, to enforce the penalty against her, by a proceeding such as has been taken in this case, without a trial by jury being necessary.

The information alleges that the vessel is under seizure by the collector. The act of 1866 does not say that the vessel shall be forfeited, but that she shall be holden for the payment of the penalty. There is to be a forfeiture sub modo, to the extent of the payment of the penalty, and she may be "seized and proceeded against summarily, by libel, to recover such penalty, in any district court of the United States having jurisdiction of the offence." The case is made by the information one of forfeiture and seizure. The vessel is alleged to be in this district, on waters navigable from the sea by vessels of ten or more tons burthen, and under seizure for the forfeiture created by the violation of the statutes to which the information refers. This court has, by the ninth section of the judiciary act of September 24, 1789 (1 Stat. 77), exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made on waters navigable from the sea by vessels of ten or more tons burthen, within this district. Under this provision, it has always been held, that, in cases of seizure on land, the right of trial by jury exists, although the proceedings in the suit are otherwise in general conformity to the course in admiralty; but that, where the seizure is made on navigable waters, the course of admiralty may be strictly observed. Union Ins. Co. v. U. S., 6 Wall. [73 U. S.] 759, 764.

Nor have I any doubt that the vessel may be proceeded against, for the penalty in question irrespective of any prior or contemporaneous proceeding against the master therefor. The objection that a proceeding against the master must precede a suit against the vessel was considered and overruled by Judge Benedict, in a case which arose under the same statutes as those involved in this case. The Missouri [Case No. 9,652].

The remaining questions are, as to whether there can be a joint suit against the vessel and the master, and as to whether the master is entitled to a trial by jury, and as to whether this suit, if not maintainable as to both vessel and master, can be dismissed as to the master, and yet a decree be rendered in it against the vessel.

As regards the enforcement of the penalty against the master, he is entitled to a trial by jury. The seventh amendment to the constitution of the United States provides, that, in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. The expression, "suits at common law," as there used, means all civil suits, in which legal rights are to be ascertained and determined, which are not of equity or admiralty jurisdiction, whatever may be the peculiar forms of such suits. Parsons v. Bedford, 3 Pet. [28 U. S.] 433, 447. The ninth section of the judiciary act of September 24, 1789 (1 Stat. 76, 77), declares, that the trial of issues of fact, in the district courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury. The suit against the master, under the statute in question, for the penalty imposed, is not made by statute cognizable in admiralty, nor is there any provision that the penalty may be recovered against the master summarily, by libel, as there is in respect to the vessel. It is contended, on the part of the United States, that, as the bringing in of the goods by the vessel, in the prohibited manner, while she was under the command of the master, is made, by the statute, the foundation for the forfeiture by the master of a sum of money equal to the value of the goods, and as, by the act of 1866, the vessel is to be holden for the payment of the penalty imposed on the master, the master must be suable therefor in the admiralty quite as much as the vessel is; that the cause of action is as fully a maritime one in respect to the master, as it is in respect to the vessel; and that the case is one where jurisdiction in personam against the master exists in this court, within the decision in the case of New Jersey Steam Nav. Co. v. Merchant's Bank, 6 How. [47 U. S.] 344, 392. The answer to this view is, that no such jurisdiction or form of remedy is given, by any act of congress, against the master, as is given by the eighth section of the act of

1866, against the vessel. U. S. v. Three Hundred and Fifty Chests of Tea, 12 Wheat. [25 U. S.] 486, 498. No authority has been cited to show that any statutory penalty has ever been recovered by a suit in personam, in the admiralty, in a case like the present, and I must hold that the right to recover the penalty from the master must be enforced by a suit at common law, and that he is entitled in that to a trial by jury.

As the right to recover against the vessel, in the present form of proceeding, is clear, and as the answer of the master excepts to the information on the ground that the suit cannot be sustained against the vessel and the master jointly, for the reason that the parties joined are entitled to separate modes of trial, and as the claimants of the vessel have not excepted, by their answer, or by any other form of pleading, to such joinder, but only except, by their answer, that the information sets forth no cause of action against the vessel, and does not show that the master has been convicted of the acts complained of, the information will be dismissed as to the master, with costs, and a decree will be entered against the vessel for the $2,440, with costs.

[Upon an appeal to the circuit court the libelants were held entitled to a decree against the vessel, with costs. See Case No. 16,108.]